IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**DAISY MARES,**

    **Plaintiff,**

v.                                                                                                                       No. 18-cv-1068 SMV

**ANDREW SAUL,**[1]
**Commissioner of Social Security Administration,**

    **Defendant.**

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

THIS MATTER is before the Court on Plaintiff's Motion to Reverse or Remand the Administrative Decision [Doc. 17] and the Memorandum in Support [Doc. 18] (collectively, "Motion"), filed on April 30, 2019. The Commissioner responded on July 26, 2019. [Doc. 23]. Plaintiff replied on August 20, 2019. [Doc. 24]. The parties have consented to my entering final judgment in this case. [Doc. 21]. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standard in evaluating the treating opinion of Dr. Montoya. The Motion will be granted, and the case will be remanded for further proceedings. *See* 42 U.S.C. § 405(g) (2018) (sentence four).

---

[1] Andrew Saul is the current Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Courts must meticulously review the entire record, but may neither reweigh the evidence nor substitute their judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. The decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While a court may not re-weigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the [Commissioner]'s findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

---

[2] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981; 416.1481 (2012). This case fits the general framework, and therefore, the Court reviews the ALJ's decision as the Commissioner's final decision.

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks omitted).

## Applicable Law and Sequential Evaluation Process

In order to qualify for disability benefits, a claimant must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (2018); 20 C.F.R. §§ 404.1505(a), 416.905(a) (2012).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920 (2012). At the first four steps of the evaluation process, the claimant must show: (1) she is not engaged in "substantial gainful activity"; *and* (2) she has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) her impairment(s) either meet or equal one of the "Listings"[3] of presumptively disabling impairments; *or* (4) she is unable to perform her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i)–(iv), 416.920(a)(4)(i)–(iv); *Grogan*, 399 F.3d at 1261. If she cannot show that her impairment meets or equals a Listing, but she proves that she is unable to perform her "past relevant work," the burden of proof then shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering her

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

3

residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

**Procedural Background**

Plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income on October 27, 2014. Tr. 12. She alleged a disability-onset date of July 17, 2013. *Id.* Her claims were denied initially and on reconsideration. *Id.* ALJ Raul C. Pardo held a hearing on August 1, 2017, in Albuquerque, New Mexico. Tr. 12, 34. Plaintiff appeared in person at the hearing with her attorney. *Id.* The ALJ heard testimony from Plaintiff and an impartial vocational expert ("VE"), Sandra Trost, who testified via telephone. Tr. 12, 34–54.

The ALJ issued his unfavorable decision on January 29, 2018. Tr. 26. He found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2018. Tr. 14. At step one, he found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. *Id.* At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "status-post left ankle surgery; depression; anxiety; migraines; pain in hands, back, and feet." *Id.* The ALJ also found that Plaintiff's carpal tunnel syndrome was not severe. Tr. 15.

At step three, the ALJ determined that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. Tr. 15–17. Because none of Plaintiff's impairments met or medically equaled a Listing, the ALJ went on to assess Plaintiff's RFC. Tr. 17–24. The ALJ found that Plaintiff had:

> the [RFC] to perform sedentary work as defined in 20 [C.F.R §§] 404.1567(a) and 416.967(a). In addition, she is never be [sic] able to operate foot controls with her left foot. She has frequent use of bilateral hands for reaching and handling. The

4

> claimant can climb ramps and stairs occasionally and can never climb ladder[s], scaffolds, and ropes. She can stoop frequently. She is limited to performing simple, routine tasks and can have only occasional contact with the public. [Plaintiff]'s time off task can be accommodated by normal breaks.

Tr. 17.

At step four, the ALJ found that Plaintiff was unable to perform past relevant work as a gate guard, corrections officer, or warehouse worker. Tr. 24. Accordingly, the ALJ went on to consider Plaintiff's RFC, age, education, work experience, and the testimony of the VE at step five. Tr. 25–26. He found that Plaintiff could perform work that exists in significant numbers in the national economy and, therefore, was not disabled. *Id.* The Appeals Council denied review on October 31, 2018. Tr. 1–3. Plaintiff timely filed the instant action on November 15, 2018. [Doc. 1].

## **Analysis**

Plaintiff presents two grounds for remand.[4] The first is not meritorious, but the second is. First, although the ALJ's findings at step three were not adequate for meaningful review, Plaintiff fails to show that she was prejudiced. The Court finds that no reasonable administrative fact-finder could rely on the evidence cited by Plaintiff to find that she met Listing 1.02(A). However, remand is warranted on the second ground. The ALJ failed to apply the correct legal standard in evaluating Dr. Montoya's treating opinions. Thus, Plaintiff's Motion should be granted.

---

[4] Plaintiff characterizes her arguments as three grounds for relief, but the third is actually a reframing of the first two.

### I. Plaintiff fails to show that a reasonable fact-finder could find that she met Listing 1.02(A), and therefore, the ALJ's conclusory findings on the issue are harmless.

Plaintiff argues that the ALJ failed to make adequate findings explaining why he determined that she did not meet Listing 1.02(A). [Doc. 18] at 10–12 (citing Tr. 23). The Court agrees that the ALJ's findings are entirely conclusory. *See* Tr. 23. Nevertheless, in this case, the error is harmless because Plaintiff fails to show that a reasonable fact-finder could find that she met the Listing.

Certainly, ALJs are not required to discuss every piece of evidence. *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996). But they must give good reasons for their findings, reasons that are sufficiently specific to allow for meaningful review. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005). At step three, ALJs must discuss the relevant evidence and make specific findings, but failure to do so does not always warrant remand. *See id.* For example, no remand is required "when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step-three determination under review." *Id.*; *see Carpenter v. Astrue*, 537 F.3d 1264, 1268 (10th Cir. 2008). Similarly, no remand is required where the error is harmless, which in the social-security context is where the reviewing court "could confidently say that no reasonable administrative fact[-]finder, following the correct analysis, could have resolved the factual matter in any other way." *Fischer-Ross*, 431 F.3d at 733.

Listing 1.02(A) requires:

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. **Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively**, as defined in 1.00B2b.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02 (emphasis added).

The ALJ expressly found that Plaintiff did not meet Listing 1.02. Tr. 15. His findings on the issue, in their entirety, are as follows:

> The severity of [Plaintiff]'s physical impairments, considered singly and in combination, does not meet or medically equal the criteria of any impairment listed in listing 1.02, regarding major dysfunction of a joint, because the record, consistent with the findings below, did not demonstrate gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joints, and findings on imaging studies of joint narrowing, bony destruction, or ankylosis of the affected joints. *In particular, there was no finding of the following:* **involvement of one major peripheral weight-hearing joint, such as a hip, knee, or ankle, resulting in inability to ambulate effectively**, or involvement of one major peripheral weight-bearing joint resulting in inability to ambulate effectively.

*Id.* (emphases added).

Plaintiff complains that these findings are inadequate. [Doc. 18] at 10–12. She complains that the ALJ's decision contains no analysis and, instead, that the ALJ merely parroted the language of the Listing and then conclusorily stated that Plaintiff failed to meet the requirements. *Id.* at 12. The Court agrees, and Defendant does not appear to disagree. *See* [Doc. 22] at 7–8. However, Defendant argues that remand is not warranted because, under the circumstances here, the error was harmless. *Id.*

Defendant argues that Plaintiff could not show that she met Listing 1.02(A) because she could not show an "inability to ambulate effectively." *Id.* at 8. The regulations elaborate on the meaning of "inability to ambulate effectively":

> b. What we mean by inability to ambulate effectively.
> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00(B)(2)(b). As Defendant reads the Listing, Plaintiff would have to show "an inability to walk without the use of a hand-held assistive device that limits the functioning of **both** upper extremities (*i.e.*, a walker)." [Doc. 23] at 7 (citing § 1.00(B)(2)(b)(1)). Because the evidence shows that Plaintiff uses only a cane, and does not use it all the time, Defendant argues that Plaintiff could not have shown that she met Listing 1.02(A).

8

*Id.* at 7–8. Thus, as Defendant sees it, the ALJ's discussion was adequate and nothing more was required. *Id.*

Plaintiff replies, acknowledging that the Listing requires "an inability to ambulate effectively." She argues, however, that there is more than one way to show such an inability. One way, she concedes, is relying on a hand-held assistive device that limits the functioning of both upper extremities. Plaintiff's position is that she may—and did—show in another way that she has an inability to ambulate effectively. [Doc. 24] at 2. Plaintiff argues that she presented evidence of an "extreme limitation of the ability to walk," *id.*, by virtue of "a limping gait and weight-bearing difficulties restricting her to standing and/or walking less than 1 hour at a time or in an 8-hour day (Tr. 779–783; 793–794; 799–803). She requires use of a cane for ambulation (Tr. 756–757)." [Doc. 18] at 11–12.

The Court is not persuaded by Defendant's position that that the lack of a "hand-held assistive device(s) that limits the functioning of both upper extremities" is dispositive. The Listing provides examples of the inability to ambulate effectively that do not include a two-handed assistive device. For example, "the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking" all evidence an inability to ambulate effectively under the Listing.

However, the evidence cited by Plaintiff fails to show that that she cannot ambulate effectively in any of these other ways. Plaintiff cites to evidence that she can stand and/or walk for less than one hour, has a limp, and uses a cane. [Doc. 18] at 11–12. But these limitations are not the same as not being able to walk a block at a reasonable pace, use standard public

9

transportation, or carry out routine ambulatory activities, such as routine shopping and banking. Accordingly, Plaintiff fails to show that a reasonable administrative fact-finder, relying on and adequately discussing the evidence to which Plaintiff cites, could have found that Plaintiff met Listing 1.02(A). The ALJ's error (in providing only conclusory findings), therefore, was harmless.

## II. The ALJ failed to apply the correct legal standard in evaluating the treating opinions of Dr. Montoya.

Social Security regulations require that, in determining disability, the opinions of treating physicians be given controlling weight when those opinions are well-supported by the medical evidence and are consistent with the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2012). This is known as the "treating physician rule."[5] *Langley*, 373 F.3d at 1119. The idea is that a treating physician provides a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations," and therefore, a treating physician's opinion merits controlling weight. *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

In order to receive controlling weight, treating physician opinions must be both supported by medical evidence and consistent with the record. If not, the opinions may not merit controlling weight but still must be given deference and weighed using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and

---

[5] The parties agree that the treating physician rule applies to this case because Plaintiff filed her claims prior to March 17, 2017. [Doc. 18] at 13 n.3; [Doc. 23] at 1 n.2; *see* 82 Fed. Reg. 5844 (Jan. 18, 2017).

(6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003); *see* 20 C.F.R. §§ 404.1527(c), 416.927(c). However, not every factor is applicable in every case, nor must an ALJ always analyze all six factors. What is absolutely necessary, though, is that the ALJ give good reasons—reasons that are "sufficiently specific to [be] clear to any subsequent reviewers"—for the weight he ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119; *see Branum v. Barnhart*, 385 F.3d 1268, 1275 (10th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In sum, when properly rejecting a treating physician's opinion, an ALJ must follow two distinct phases. First, the ALJ must find that the opinion is not supported by medical evidence and/or is not consistent with the record. Second, the ALJ must still give deference to the opinion and weigh it according to the factors listed above. Like all findings, an ALJ's findings in these two phases must be supported by substantial evidence.

In this case, the ALJ described some of Dr. Montoya's treatment notes, Tr. 20–23, and ultimately rejected his opinions as unsupported and inconsistent with the record, Tr. 23. The ALJ explained how he evaluated Dr. Montoya's opinions as follows:

> I gave little weight to the questionnaires provided by Dr. Montoya. The questionnaires are conclusory and are not supported by objective evidence (Exhibits 25F and 29F). In addition, Dr. Mont[oy]a's treatment notes do not support the limitations in the questionnaires. The questionnaires are inconsistent with the record as a whole and as such, they were a[cc]orded little weight.

*Id.* Plaintiff challenges these findings; she argues that the ALJ failed to properly weigh Dr. Montoya's opinion. [Doc. 18] at 12–15. The Court agrees.

11

These reasons are legally insufficient because they address only phase one of the treating physician analysis. These reasons (if supported by substantial evidence, which the parties dispute) may explain why Dr. Montoya's opinions were not entitled to controlling weight, but that is not the end of the analysis. The ALJ must then discuss the weight he assigns to the opinion in terms of the phase-two factors. Although ALJs need not address every factor at phase two, some distinct step-two findings are required to determine what amount of weight, if any, the opinion should receive. *E.g.*, §§ 404.1527, 416.927; *Watkins*, 350 F.3d at 1300–01; Social Security Ruling 96-2p, 1996 SSR LEXIS 9;[6] *see generally Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003) (explaining the origin and evolution of the treating physician rule, which was formally codified more than 25 years ago). Here, the ALJ found that Dr. Montoya's opinions were not supported (i.e. were "conclusory") and were not consistent with the record. These are phase-one findings. The ALJ made the phase-one findings and jumped to the conclusion that Dr. Montoya's opinions merited "little weight." The reversible error is the lack of any discussion about any phase-two factor. The ALJ was required to make findings based on the phase-two factors. This he did not do. To be sure, the ALJ's analysis need not be an example of technical perfection, but the Court must be able to follow his reasoning. The Court cannot. The absence of any phase two finding is reversible error.

---

[6] This ruling has since been rescinded. Nevertheless, it applies to this case because Plaintiff's claims were filed before March 27, 2017. *See* 82 Fed. Reg. 15263 (Mar. 27, 2017).

**Conclusion**

Plaintiff fails to show that the ALJ's conclusory findings at step three prejudiced her. However, remand is warranted for application of the correct legal standard in evaluation of Dr. Montoya's treating opinions.

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED** that Plaintiff's Motion to Reverse or Remand the Administrative Decision [Doc. 17] is **GRANTED**. The Commissioner's final decision is reversed, and this case is remanded for further proceedings in accordance with this opinion. *See* § 405(g) (sentence four).

**IT IS SO ORDERED.**

_____
**STEPHAN M. VIDMAR
United States Magistrate Judge
Presiding by Consent**